IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BREANN NEELEY,<br><br>                 Plaintiff,<br>vs.<br><br>EXPRESS RECOVERY SERVICES,<br><br>                 Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No.  2:10CV604 DAK |

This matter is before the court on Plaintiff Breann Neeley's Motion for Summary Judgment and on Defendant Express Recovery Services' Motion for Summary Judgment. A hearing on the motions was held on February 29, 2012. At the hearing, Ms. Neeley was represented by Joshua R. Trigsted, and Defendant Express Recovery Services was represented by Caleb J. Frischkneckt. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order

BACKGROUND

This case involves a single claim by Plaintiff that Express Recovery violated §1692e(8) of the Fair Debt Collection Practices Act ("FDCPA"), which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[c]ommunicating or threatening to communicate to any person credit information which is known to be false, including the failure to communicate that a

disputed debt is disputed." 15 U.S.C. § 1692e(8). Specifically, Plaintiff claims that Defendant violated this statutory provision by failing to communicate to a credit reporting bureau that Plaintiff had disputed her debts.

Prior to April 7, 2010, Defendant was attempting to collect two debts from Plaintiff, one to Smith's Food & Drug (the "Smith's Debt") and one to University Pediatric Faculty (the "Pediatric Debt"). Defendant had furnished information about the alleged unpaid debts to the various credit bureaus. The credit bureaus maintain a system for disputing debts called "e-OSCAR." Plaintiff disputed both debts through Experian's e-OSCAR system, claiming that she did not owe either debt.

Defendant received notice via the e-OSCAR electronic dispute notification system on April 7, 2010 that Plaintiff had lodged a dispute through Experian. This dispute notification requested that the debt be verified. In response, Defendant sent a communication to Experian, verifying that Plaintiff owed both debts and that the existing information on file with Experian at that time was accurate.[1] The communication also incorporated Plaintiff's description of each dispute: "I DO NOT KNOW WHAT THIS IS?" (Smith's Debt) and "THIS ACCOUNT WAS PAID IN FULL AS OF JULY 2009 IT IS SHOWING PIF PER TRANSUNION." (Pediatric Debt). Express Recovery believed that Plaintiff's dispute of the debts was inherent in its

---

[1] The statute does not clearly define what is meant by "verifying" the debt. The Fourth Circuit has held that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999); *see also Maynard v. Cannon*, 401 Fed. Appx. 389, 393 (10th Cir. 2010) (following *Chaudhry*). In any event, Plaintiff has not specifically argued that Defendant inaccurately or improperly verified the debt.

response to the e-Oscar disputes lodged by Plaintiff and that the credit bureaus would therefore know that the debts were disputed.  In other words, if there were no disputes by Plaintiff, Express Recovery would not have had anything to which to respond.

Plaintiff contends that this communication that "verified" the debt violated § 1692e(8) because Defendant did not indicate that the debt was disputed or request that Experian mark the debt as disputed.  While Defendant admittedly did not explicitly indicate that the debt was disputed in response to the e-OSCAR verification request in April 2010, it did report the debt as disputed in the next reporting cycle, in May 2010.   The reason offered by Defendant for not indicating that the account was in a disputed status when it responded to Experian's verification request in April, 2010, and the reason it did not do so until May, 2010, is that Defendant did not believe that it was required under the FDCPA to request that the debt be marked disputed or indicate to Experian that the debt was in a disputed status in response to Experian's notification that Plaintiff disputed the debts.  Defendant believed that because Experian already knew there was a dispute, having received notice of the dispute from Plaintiff, that it was Experian's responsibility to mark the account as disputed.

## DISCUSSION

The parties agree that there is no genuine issue of fact in dispute.  Rather, the question is whether, as a matter of law, this communication from Defendant violated the FDCPA.  If Defendant's communication violated the FDCPA, the next question is whether Defendant is entitled to the *bona fide* error defense.[2]

---

[2] Defendant also argues that it is entitled to summary judgment because Plaintiff has not submitted any evidence to prove that the debts at issue in this case were incurred "primarily for

The parties–and this court–have been unable to locate any legal authority that directly addresses the issue at hand. The court finds that Plaintiff's reliance on one unpublished case, *Wesley v. Cavalry Investments, LLC*, 2006 WL 1285020 (E.D. Pa. May 9, 2006), is misplaced. In *Wesley*, the plaintiff argued that the defendant debt collector "failed to report her debt as disputed even after being notified by Trans Union that she disputed the debt." *Id*. at *2. The defendant moved to dismiss, arguing that as long as it fulfilled its obligations under the Fair Credit Reporting Act ("FCRA") in responding to a consumer dispute, it was not required under the FDCPA to list the account as disputed. *Id*. at *1-2. The *Wesley*, court held that fulfillment of the statutory requirements of the FCRA did not relieve the defendant of its obligation to report the debt as disputed under the FDCPA. *Id*. Moreover, in *Wesley*, it appears that the defendant debt collector completely failed to report the debt as disputed, which is unlike the circumstances in the instant case where the debt was indeed marked as disputed in Defendant's next reporting cycle. Thus, the court's holding in *Wesley* is not helpful in this case.

Given the lack of any authority suggesting that Defendant violated the FDCPA under the specific facts of this case, the court finds that Defendant did not violate § 1692e(8). Defendant acted reasonably in assuming that Plaintiff's dispute of the debts was inherent in Defendant's response to the e-Oscar dispute, and therefore that the credit bureaus were aware of the dispute. First, Plaintiff's email dispute was actually set forth in Defendant's email response to the dispute

---

personal, family, or household purposes," which is a prerequisite to all claims under the FDCPA. 15 U.S.C. § 1692a(5). In light of the totality of the evidence provided to the court from both parties, it appears that the debts were incurred for personal, family, or household purposes, and there is no evidence to the contrary.

4

notification.  In addition, the sole reason for Defendant to even communicate with the credit bureaus was in response to Plaintiff's dispute of the debts through the credit bureau's own dispute notification system.  Moreover, Defendant complied with its own internal procedures and marked both debts as disputed in its very next reporting cycle on May 10, 2010, thereby fulfilling its obligations to report the debt as disputed.

Even if Defendant's response to the dispute notification violated the FDCPA, the court concludes that the violation resulted from a bona fide error, which precludes liability in any event.  Specifically, a debt collector may not be held liable under the FDCPA "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error."  15 U.S.C. § 1692k(c).  "[A]n FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error."  *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006).   The Defendant is not required to show the policies and procedures were perfect, only that they show reasonable precaution. *See Kort v. Diversified Collection Serv., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005) ("[Section] 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution.").

In this case, any potential violation of the FDCPA by Defendant resulted from a bona fide error.  First, Express Recovery did not intend to communicate any false credit information to the credit bureaus concerning the Smith's Debt or the Pediatric Debt.   Rather, Defendant believed

5

that notification of the dispute was inherent in its response to the e-Oscar disputes lodged by Plaintiff and that the credit bureaus would therefore know that the debts were disputed. Defendant also believed that the credit bureaus, similar to Express Recovery's policy and procedure, would flag the Smith's Debt and the Pediatric Debt as disputed in their own data systems upon receiving Plaintiff's e-Oscar disputes and Defendant's responses thereto. To the extent Express Recovery may have been incorrect as to the credit bureaus' procedures — which Plaintiff has not demonstrated — such error was not intentional.[3]

Second, Plaintiff has stipulated that any such error was bona fide, as there is no evidence that Express Recovery's error was not genuine. Finally, the court finds that Defendant has satisfied the third prong of the bona fide error defense. Defendant employed policies and procedures for reporting disputes that were designed to ensure that disputed debts were timely reported as disputed. The procedures component of the bona fide error defense involves a two-step inquiry. *Johnson*, 443 F.3d at 729.

The first step is whether the collector maintained procedures to avoid errors. *Id*. The second step is whether the procedures were reasonably adapted to avoid the specific error at

---

[3] Express Recovery does not rely on a mistake of law to establish its bona fide error defense. In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1611-25 (2010), the Supreme Court held that a violation resulting from a mistaken interpretation of the FDCPA can never be "not intentional" under 15 U.S.C. § 1692k(c). Here, Defendant's error — if it was an error — was its belief that the credit bureaus would obviously know that Plaintiff's debts were disputed by the very fact that they received both Plaintiff's disputes and Express Recovery's responses to those disputes, and that there was no danger for misleading the credit bureaus prior to Express Recovery's next reporting cycle when the debts were independently reported as disputed. This error goes to the fact of how Express Recovery's responses to Plaintiff's disputes would be understood by the credit bureaus. Express Recovery's defense does not rely on a mistaken interpretation of the FDCPA.

issue. *Id*. Here, Express Recovery implemented a policy and procedure requiring its employees to update Express Recovery's records to reflect any dispute concerning a debt it was attempting to collect immediately upon receiving notice of such dispute, thereby ensuring that the debt would be properly reported as disputed in Express Recovery's next reporting cycle. Express Recovery then timely reports those disputes to the credit bureaus in its very next reporting cycle. Express Recovery thus maintained procedures to avoid errors with respect to dispute reporting. Express Recovery's procedures were reasonably adapted to ensure that customer disputes were timely reported to the credit bureaus within approximately thirty days after receiving them. Indeed, given the evidence presented in this case, Defendant's reporting procedures appear to be the standard practice for debt collection agencies. Accordingly, Express Recovery has established each of the three elements of the bona fide error defense, and Plaintiff's claim therefore fails on this independent ground.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Docket No. 24] is DENIED, and Defendant's Motion for Summary Judgment [Docket No. 28] is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendant.

DATED this 9th day of May, 2012.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge